Judy I. JONES, Personal Representative of the Estate of Robert T. Jones, deceased, Plaintiff and Appellant,

v.

Irene H. JONES, Individually; Irene H. Jones as Personal Representative of the Estate of R. H. Jones, also known as Robert H. Jones, deceased; and Ina M. Still, Judge of the County Court of Golden Valley County, North Dakota, Defendants and Appellees.

Civ. No. 9933.

Supreme Court of North Dakota.

Oct. 7, 1981.

As Amended Oct. 23, 1981.

Freed, Dynes, Malloy & Reichert, Dickinson, for appellant; argued by George T. Dynes, Dickinson.

Orrin B. Lovell and Harold H. Halstead, Beach, for appellees, appeared on briefs but did not argue.

Zuger & Bucklin, Bismarck, for appellees; argued by Leonard H. Bucklin, Bismarck.

SAND, Justice.

This is an appeal by the plaintiff, Judy I. Jones [Judy], in her capacity as personal representative of the estate of Robert T. Jones [Timer] from a judgment dismissing her complaint which sought to rescind an assignment issued by Timer to his mother, Irene Jones [Irene], to release Timer's claim in the estate of his father, Robert H. Jones.[1]

Judy is the widow of and personal representative of the estate of Timer who died on 26 Apr 1976. Irene is the widow of and personal representative of the estate of Bob who died on 8 June 1974. Bob and Irene lived at Beach, North Dakota, and had five children: Jeanne Faiman, Karen Burkhardt, Rosemary Hodges, Jule Neville, and Timer.

Bob and Irene were partners in what was originally a six-person partnership known as the Hudson Company. The original partnership was formed in the early 1950's and was documented by a written partnership agreement. The written agreement was destroyed in a fire in 1967, and it is undisputed that there was no written partnership agreement between the partners after that date.

Due to death and buy-outs, the number of partners in the partnership changed. The last change occurred in 1970 when Bob and Irene became the owners of all the partnership property. The partnership property consisted of ranch land, cattle, and machinery. The record reflects that Bob and Irene owned 40% of the property as joint tenants and 60% of the property as tenants in common.

On 8 June 1974 Bob died intestate leaving only a little property except for his partnership interest.[2] Irene contacted attorney Or-

---

1. These parties were before this Court *In Matter of Estate of Jones*, 288 N.W.2d 758 (N.D. 1980), wherein we held that the county court had no jurisdiction to rescind Timer's assignment and an appeal to the district court, under the circumstances, did not vest jurisdiction in that court.

2. At oral argument we were informed that the value of Bob's nonpartnership property was approximately $20,000.

rin Lovell to probate Bob's estate, and he prepared individual appearance and waiver, assignment of interest, and request for distribution papers [assignments] which were sent to each of the five children. The assignments released the children's interest in the estate of their father. The assignments were prepared after Irene told Lovell that, pursuant to the partnership agreement between her and Bob, the surviving spouse was to take the entire interest in the partnership.

The assignment which Lovell sent to Timer was accompanied by a cover letter which, in relevant part, provided:

"Essentially, the majority of the property in the Estate is part of the Hudson Company partnership. As such, this partnership property would go to your mother under the Partnership Agreement.... "As indicated, I do not believe that your interest would be very great, but it may be that you might be in disagreement with this. If so, you should understand that this Assignment gives to your mother all your interest in the estate."

Prior to signing the assignment, Timer consulted attorney William E. Gilbert concerning his legal rights. After consulting with Gilbert who, in turn, had telephone conversations with Lovell, Timer signed the assignment on 29 July 1974.

Timer died on 26 Apr 1976, and Judy subsequently commenced the present action to rescind her husband's assignment. Judy asserted that she was entitled to rescind the assignment on the ground that Timer was led to believe that a written partnership agreement with survivorship rights in the surviving spouse existed when, in fact, it did not. Judy also claimed that Timer was induced by fraud, misrepresentation, and mistake to sign the assignment.

The district court found that after 1970, Bob and Irene operated the partnership under an oral agreement and that the oral agreement included a provision that the survivor of Bob and Irene would become the owner of the partnership property. The district court also found that Timer's consent to sign the assignment was freely given and was not induced by mistake, fraud, duress, menace, or undue influence. Further, the district court found that representations or statements made by Irene or her representatives that there was a survivorship agreement constituted neither fraud nor misrepresentations. Based on these findings, the district court dismissed Judy's complaint, and she appealed to this Court.

The first issue raised by Judy is whether or not the district court erred in finding there was an oral partnership agreement between Bob and Irene which contained a provision that the surviving spouse would receive the partnership property.

■ The agreement between the parties is controlling as to the features of the partnership and is the law of the partnership. *Liechty v. Liechty*, 231 N.W.2d 729 (N.D.1975). A partnership arises from the contract between the parties as expressed in their agreement or as implied by the dealings with each other. *Schlichenmayer v. Luithle*, 221 N.W.2d 77 (N.D.1974). The agreement between the parties may be oral. *Gangl v. Gangl*, 281 N.W.2d 574 (N.D.1979). See, 59 Am.Jur.2d *Partnership* § 34, p. 956. In *Rummel v. Rummel*, 265 N.W.2d 230, 236 (N.D.1978), we noted that "marriage is in a sense a partnership."

■■ Our review of the district court's findings is governed by the "clearly erroneous" standard of Rule 52(a), North Dakota Rules of Civil Procedure. A particular finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on all the evidence is left with a definite and firm conviction that a mistake has been made. *Wilhelm v. Berger*, 297 N.W.2d 776 (N.D.1980). Simply because we might have viewed the evidence differently had it been presented to us initially as the trier of fact does not entitle us to reverse the trial court. *Wilhelm v. Berger, supra.*

In this instance the acts of the parties and the record are consistent with the evidence of an oral partnership agreement between Bob and Irene. Additionally, the record reflects that Irene and her four

daughters testified that the survivorship feature was included in the oral partnership agreement. Furthermore, the record reflects that Timer knew that Bob's property was in a partnership and that it would go to the surviving spouse.

However, Judy asserts that some of the acts done by Irene and her counsel after the death of Bob are inconsistent with a partnership agreement containing a survivorship feature. In particular, Judy points to the North Dakota estate tax return and subsequent amendment which was filed for Bob's estate. This return reflects that, for purposes of estate taxes and determination of exemptions, the partnership property was not treated as if there was a survivorship agreement, but was treated in accordance with the assignment.

 The estate tax return was prepared by attorney Lovell, who testified in substance that it was his original understanding that he could treat the property under either the assignment or the survivorship feature. Lovell further testified that he prepared the return to reflect the assignment so as to give the greatest estate tax benefit to Bob's estate. Lovell's testimony also reflects that the estate tax return was amended a second time to reflect a partnership survivorship agreement. This return was not admitted into evidence, nor is it part of the record on appeal. Although the estate tax returns may suggest an inconsistency with the survivorship agreement, we believe Lovell's testimony adequately resolves what inconsistencies may have appeared. In addition, we must recognize that Irene had a right to rely upon the advice of her attorney in technical matters such as estate tax returns. Furthermore, it is for the trial court, as the initial trier of facts, to weigh competing evidence and to resolve factual questions.

 After reviewing the testimony and the entire record before us we cannot say that the district court's finding that the oral partnership agreement contained a survivorship feature was clearly erroneous.

An interrelated issue raised by Judy is that the trial court erred in finding that the

statute of frauds and the statute of wills had no bearing upon this case and that it made no difference whether the partnership agreement was oral or written. The district court determined that the assignment was valid and therefore did not consider the effect of the oral partnership survivorship agreement.

Initially, we note an admission at trial by counsel for Judy that the real and personal property in Bob's estate was "nearly all" utilized in connection with the partnership and was partnership property. The record supports this admission.

Pursuant to NDCC § 45–08–01, a partner is vested with rights to partnership property, but does not get title. That section provides as follows:

"The property rights of a partner are:

1. His rights in specific partnership property.

2. His interest in the partnership.

3. His right to participate in the management."

A partner's interest in partnership property is his share of the profits and surplus and is treated as personal property for all purposes. NDCC § 45–08–03. See also, 60 Am.Jur.2d *Partnership* § 87, p. 17.

Section 45–08–02, NDCC, relates to a partner's rights to specific partnership property and provides, in part, as follows:

"1. A partner is coowner with his partners of specific partnership property holding as a tenant in partnership.

"2. The incidents of this tenancy are such that:

. . . .

"d. On the death of a partner his right to specific partnership property vests in the surviving partner or partners, except where the decedent was the last surviving partner, when his right to such property vests in his legal representative. Such surviving partner or partners, or the legal representatives of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

"e. A partner's right in specific partnership property is not subject to dow-

er, curtesy, or allowance to widows, heirs, or next of kin."

We also note that NDCC § 30.1–05–01 gives the surviving spouse the right of election to take one-third of the estate under certain limitations and conditions if the other spouse dies intestate.

■ The instant situation is a mere extension of these statutory provisions. Compliance with the statute of frauds that the agreement be written is not necessary to transfer the partner's interest or rights to the surviving partner where agreement is partially executed. *Buettner v. Nostdahl*, 204 N.W.2d 187 (N.D.1973). In this instance the partnership agreement, at least, was partially executed except for the survivorship provision.

Furthermore, we also note the following from 60 Am.Jur.2d *Partnership* § 256, p. 160, 161:

"A provision in a partnership agreement that on the death of one of the partners his interest in the partnership shall become the property of the other partners is not testamentary in nature, and the fact that the agreement is not executed according to the requirements of the statute of wills does not invalidate it, if it is supported by sufficient consideration." [Footnote and citations omitted.]

See also, *Balafas v. Balafas*, 263 Minn, 267, 117 N.W.2d 20, 27 (1962).

Based on this, we conclude that compliance with the statute of frauds or statute of wills is not necessary to establish a partnership agreement with a survivorship feature.

The next two issues raised by Judy relate to the factual circumstances surrounding the signing of the assignment by Timer. Judy asserts the trial court erred in its finding that there was no misrepresentation or fraud concerning the form, existence, and effect of the partnership agreement as presented to Timer at the time he signed off to Irene, and that the trial court erred in finding that there was no material mistake of fact at the time Timer signed off to Irene.

Judy asserts that because Timer was not told the written agreement had burned in 1967 and was not available, the factual circumstances of the case indicate there was either fraud, misrepresentation or a mistake in the procurement of the signing of the release, and therefore she should be entitled to rescind the release.

Section 9–09–02, NDCC, enumerates the grounds for rescission of a contract, and provides, in part, as follows:

"A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds . . . ."

Fraud is classified as either actual [3] or constructive,[4] NDCC § 9–03–07.

■ Fraud must be proved by evidence that is clear, satisfactory, and convincing. *Verry v. Murphy*, 163 N.W.2d 721 (N.D. 1969).

3. Actual fraud is defined in NDCC § 9–03–08, which provides as follows:

"Actual fraud within the meaning of this title consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1. The suggestion of fact of that which is not true by one who does not believe it to be true;

2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive."

4. Constructive fraud is defined in NDCC § 9–03–09 and provides as follows:

"Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud."

 In this instance we agree with the district court's finding that Judy has not sustained her burden of showing fraud by clear, satisfactory, and convincing evidence.

The record reflects that Timer was aware of the partnership and the survivorship agreement and that Timer had knowledge of family discussions concerning the partnership and the survivorship agreement as did the other four children. Attorney Gilbert testified through deposition that Timer relied upon information he already knew when he signed the release. Although Timer may not have been informed that the partnership agreement was not in writing, this fact by itself is not significant because the survivorship agreement need not be in writing.

Based on the foregoing, we cannot conclude the district court erred in finding there was no fraud or misrepresentation by Irene in obtaining Timer's signature on the assignment.

 The next issue raised by Judy is that the district court erred in finding there was no material mistake of fact on Timer's part when he signed off to Irene. Judy asserts that Timer had a mistaken belief that there was a written partnership agreement when in fact the partnership agreement was oral.

Section 9–03–13, NDCC, defines "mistake of fact" as follows:

"Mistake of fact is a mistake not caused by the neglect of a legal duty on the party of the person making the mistake and consisting in:

1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed."

The district court in its memorandum decision which was specifically incorporated into the court's findings of fact, found that:

"Timer was not acting under any mistake of fact under 9–03–13. The survivorship agreement was a fact and he knew of it.

Based upon the knowledge concerning the survivorship agreement which the record reflects that Timer had, we cannot conclude the district court erred in finding that Timer was not operating under a mistake of fact. Even if there was a mistake by Timer in not knowing that the partnership agreement was not in writing, we could not say that the mistake was material to his signing the release.

The next issue raised by Judy is that the trial court erred in finding that Irene disclosed all pertinent facts to Timer as required by NDCC § 30.1–18–13.[5] The district court in its memorandum decision determined that Timer signed the release with knowledge of the survivorship agreement and after legal advice. The district court further found that no material facts were withheld from Timer. Based upon our previous discussion of Timer's knowledge of the survivorship agreement, we agree with the district court's findings.

For reasons stated in this opinion the decision of the district court is affirmed.

ERICKSTAD, C. J., PEDERSON and VANDE WALLE, JJ., and KERIAN, District Judge, concur.

KERIAN, D. J., sitting in place of PAULSON, J., disqualified.

---

5. Section 30.1–18–13, NDCC, provides as follows:

"Any sale or encumbrance to the personal representative, his spouse, agent, or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any corporation or trust in which he has a beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless:

1. The will or a contract entered into by the decedent expressly authorized the transaction; or

2. The transaction is approved by the court after notice to interested persons.