Sam S. ESZLINGER and Esther M. Eszlinger, individually and as husband and wife, Plaintiffs and Appellants,

v.

Walwin WETZEL and Christine Wetzel, husband and wife, Defendants and Appellees.

Civ. No. 10142.

Supreme Court of North Dakota.

Nov. 18, 1982.

---

Russell J. Jensen, St. Paul, Minn., and Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiffs and appellants; argued by Russell J. Jensen, St. Paul, Minn.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendants and appellees; argued by Albert A. Wolf, Bismarck.

PEDERSON, Justice.

This is an appeal by Sam and Esther Eszlinger from an amended judgment that allowed Walwin and Christine Wetzel to rescind a contract for deed and to recover their down payment, and denial of a motion for new trial. The judgment and the order denying the motion for new trial are affirmed.

A 10-acre tract of land located less than one-half mile north of the city limits of Ashley, owned by the Eszlingers, was offered for sale at a public auction on October 16, 1979. The auction bill contained, among other statements, the following:

> "This property is located very good for industrial location—also very nice to build a new house."

> "TERMS—20% Down Payment, 10% day of sale, 10 yrs. for payments at 7% Interest."

The Wetzels were the successful bidders at $45,000 and, on November 16, 1979, the Eszlingers and the Wetzels executed a contract for deed. The contract acknowledged a $9,000 down payment and required four annual payments of $9,000 each, plus 7% interest on the principal balance from November 1, 1979. The first payment was due November 1, 1980. The contract contained a recitation that time was of the essence and that, upon a default by the Wetzels, the "agreement to be void, at the election of" the Eszlingers.

The Wetzels did not make the payment due on November 1, 1980 but, on or about November 20, 1980, gave Eszlingers a "Notice of Rescission of Contract for Deed,"

claiming "mistake of fact, and/or misrepresentation." On December 8, 1980, the Eszlingers instituted this action, demanding cancellation of the contract for deed by action, pursuant to Chapter 32–18, NDCC. The Wetzels answered, alleging fraud and mistake as grounds for rescission and counterclaimed for the return of their $9,000 down payment.

The suit was tried to the court without a jury and a considerable amount of conflicting evidence, with conflicting inferences, was introduced. The trial court prepared a lengthy memorandum opinion and executed findings of fact, conclusions of law, and order for judgment prepared by counsel for Wetzel, all of which contained a considerable quantity of surplusage. Later, an amended opinion and amended findings were prepared.

The question before the trial court required a determination of whether or not the proven facts established a right in the Wetzels to rescind under the law of this state. Section 9–09–02, NDCC, provides in pertinent part:

"A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding . . . was given by mistake or obtained through . . . fraud, . . . exercised by or with the connivance of the party as to whom he rescinds . . . ."

The Wetzels did allege mistake and fraud. There was testimony in direct conflict on these questions. Trial courts are required to find the facts specially under Rule 52(a), NDRCivP. Although the Eszlingers attempted by a motion to amend the findings of fact under Rule 52(b), NDRCivP, to convince the trial court to reach the opposite result, they do not challenge any specific finding on the ground that it is clearly erroneous or that it does not support the result reached. Nevertheless, if this court is to give trial court findings of fact the deference that Rule 52(a) contemplates, we must clearly understand how those findings support the conclusion reached. See, e.g., Vetter v. Vetter, 267 N.W.2d 790, 794–795 (N.D.1978), and Ellen-dale Farmers Union Cooperative Ass'n v. Davis, 219 N.W.2d 829, 836 (N.D.1974).

We do not intend to imply that an unexplained finding that the contract "was given by mistake" or "obtained through fraud" would be alone adequate. Conclusory, general findings do not constitute compliance with Rule 52's direction. See Matton Oil Transfer Corp. v. The Dynamic, 123 F.2d 999 (2d Cir.1941). As noted by the United States Supreme Court:

"To be sure, conciseness is to be strived for, and prolixity avoided, in findings; but, . . . there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be." Commissioner v. Duberstein, 363 U.S. 278, 292, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960).

■ We believe that the outcome of this appeal must rest upon the adequacy of amended findings of fact numbered VI and VII, and amended conclusion of law numbered I, as follows:

Amended Finding of Fact VI:

"That the plaintiff [Eszlingers] through the auctioneer, represented that the property was usable for a feedlot operation with up to 80 head of cattle by representing that such use had been made of the property recently."

Amended Finding of Fact VII:

"That the city ordinance and the interpretation thereof by the city council of the City of Ashley determined that such use of the property for a feedlot operation with 30 head of cattle or more would be in violation of the city's zoning ordinance and not permit it."

Amended Conclusion of Law I:

"That the defendants [Wetzels] purchased the property of the plaintiffs [Eszlingers] described herein in reliance upon a misrepresentation made by the plaintiffs [Eszlingers] concerning the use of the property and further reliance upon a mistake of fact and law and its belief that there was no prohibition against the use of the property for feedlot purposes."

It is possible that a fuller statement of finding, using other terminology, might have more adequately explained the basis of the trial court's determination that the contract for deed was based upon a mistaken belief by the Wetzels that the site was suitable for the operation of a feedlot, induced by fraud or misrepresentations by the Eszlingers or their agent.

We are satisfied that was the issue framed by the pleadings and actually tried, and that we have correctly understood the basis of the trial court's determination.

■ Some of us might have agreed with Eszlinger had this court been the trier of the fact. We perform only a review function. We do not substitute our judgment for that of the trial court. *Jones v. Jones,* 310 N.W.2d 753 (N.D.1981). There is, in this case, substantial evidence in support of the findings. A finding of fact is not clearly erroneous unless it has no support in the evidence or, although there may be some supporting evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Jochim v. Jochim,* 306 N.W.2d 196 (N.D.1981). We have no such definite and firm conviction in this case.

■ In their motion for new trial and on appeal in this court, the Eszlingers raise additional arguments: that the City of Ashley should have been made a party; that the Ashley zoning ordinance does not prohibit the use of the property for feedlot purposes; and that the Wetzels did not fully test their rights under the ordinance. We are urged to remand for additional trial of those issues as authorized by Rule 35, NDRAppP.

Insofar as issues raised before the trial court on the motion for new trial—our scope of review involves, almost entirely, the discretion of the trial court. See *Hoge v. Hoge,* 281 N.W.2d 557 (N.D.1979), particularly headnotes 3 and 4. See also the general discussion of the effect of motions for new trial in cases tried to the court without a jury in *Frederick v. Kubisiak,* 317 N.W.2d 120 (N.D.1982). We are not con-

vinced that the failure to grant a new trial in this case was an abuse of discretion.

To the extent that new arguments and theories are presented on appeal which were not presented to the trial court, we refer to a statement that we made in *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975):

"It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy."

The judgment and the order denying the motion for new trial are affirmed.

ERICKSTAD, C.J., and VANDE WALLE and SAND, JJ., concur.

ECKERT, District Judge, sitting in place of PAULSON, J., disqualified.

ECKERT, District Judge, dissenting.

I agree with Justice Pederson's statement that the question before the trial court required a determination of whether or not the proven facts established a right in Wetzel to rescind under the laws of this state. The facts as I understand them to exist are that Wetzel agreed to purchase the Eszlinger property at an auction sale because of statements made by the auctioneer that the property was usable for a feedlot operation for up to 80 head of cattle. It was also stated that such use had been made of the property recently. Unknown to Wetzel, and probably unappreciated by Eszlinger, the City Council of the City of Ashley had earlier passed an ordinance zoning not only the city but also property within one-half mile of its boundaries. Under the zoning ordinances of the City of Ashley it was the duty of an administrative official designated by the City Council to administer and enforce the ordinance. Appeals from any decision of the administrative officer could be made to a five member board appointed by the City Council, called the Board of Adjustment. Determinations of the Board of Adjustment were reviewable by the District Court through an application for a writ of certiorari. Section 40–47–11, NDCC.

Although the zoning ordinance was passed in 1977, the City Council had failed to appoint an administrative officer, nor had it appointed any of the members of the Board of Adjustment. Neither the administrative officer nor the Board of Adjustment, then, has been presented with the question of whether using the Eszlinger property for a feedlot for up to 80 head of cattle would constitute a violation of Ashley's zoning ordinance. There is no evidence that Wetzel requested the City of Ashley to appoint the administrative officer required by the zoning ordinances nor a Board of Adjustment. As a result there has been no determination made by appropriate officials that the statements made by Eszlinger through the auctioneer were false.

What did Wetzel do to sustain his burden of proof? He apparently listened to a local implement dealer. He secured an interpretation from the mayor and he met with the City Council. It is true that the City Council of Ashley, in a 3–3 tie vote broken by the vote of the mayor, held that the proposed use of the property violated the zoning ordinances of the City of Ashley. The mayor and the implement dealer also stated that they felt that the proposed use violated the zoning ordinances. Under the ordinances of the City of Ashley, however, none of these people had any authority to give a binding opinion or decision on such a matter. The power to resolve such an issue was vested in the administrative official and the Board of Adjustment. Although it is true that the City Council had not appointed these officers, there is no evidence to indicate that if the necessity of doing so were pointed out to the Council that the positions would not be filled. Certainly nothing in the ordinances of the City of Ashley or the statutes of the State of North Dakota provided that in the event of a vacancy in these offices that their functions would be assumed by the mayor or City Council.

I would reverse the trial court's decision in this case.